UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

HomeWAV, LLC
11100 Linpage Place, Suite 200
St. Louis, MO 63132

    Plaintiff

        v.                                Case No. 19-cv-393

T.W. Vending, Inc. d/b/a               Case Type: Declaratory Judgment
TurnKey Corrections
3329 Casey Street
River Falls, WI 54022

    Defendant.

## COMPLAINT

COMES NOW Plaintiff, by and through its attorneys, and for its Complaint against Defendant, T.W. Vending, Inc. d/b/a TurnKey Corrections, hereby states as follows:

### THE PARTIES

1. Plaintiff HomeWAV, LLC ("HomeWAV") is a Delaware Limited Liability corporation, with its principal place of business located in the State of Missouri, at 11100 Linpage Place, Suite 200, St. Louis, Missouri 63132.

2. Defendant T.W. Vending, Inc. d/b/a TurnKey Corrections ("TurnKey") is a Wisconsin corporation with its principal place(s) of business in the State of Wisconsin at 3329 Casey Street, River Falls, Wisconsin 54022 and/or at 2801 Harvey Street, Hudson, Wisconsin 54016.

**JURISDICTION AND VENUE**

3. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship) because each of HomeWAV's nine members have citizenship in states that are diverse from TurnKey, as follows: Jay Johnson, citizen of Illinois; Daniel Farris, citizen of Illinois; Chris Chelios and Tracee Chelios (collectively), citizens of Michigan; David White, citizen of Illinois; Jeff Brower, citizen of Illinois; the Bochy Family Trust, in California (with Bruce Bochy as trustee, citizen of California); John Best, citizen of Missouri; Robert Gordon, citizen of Illinois; and David Newkirk, citizen of Illinois.

4. Both parties are in agreement that the amount in controversy exceeds $75,000, exclusive of interest and costs in that TurnKey has sent a draft lawsuit to HomeWAV in which it alleges the amount of controversy is greater than $75,000. In addition, as alleged herein, TurnKey seeks to prevent HomeWAV's sales employee (who is paid over $75,000 per year to manage and generate sales obviously in sums far greater than $75,000) from continuing to provide services to HomeWAV. In fact, TurnKey has sent an arbitration demand to its former sales employee alleging that it (TurnKey) will suffer damages in excess of $75,000.00 as a result of the employee's employment with HomeWAV.

5. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties.

6. Venue in the Western District of Wisconsin is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

7. Defendant TurnKey provides commissary, email, inmate phone, video visitation, law library access, and other services to inmates through contracts with correctional facilities throughout the nation.

8. Plaintiff HomeWAV is a competitor of TurnKey, in that HomeWAV provides some of the services that TurnKey provides, which include inmate telephone services and inmate video visitation services through contracts with correctional facilities throughout the nation. However, TurnKey does provide some services (*e.g.*, commissary and food services) that HomeWAV does not provide.

9. Anthony Brooks ("Brooks") is a former TurnKey employee.

10. On or about July 2, 2018, while employed by TurnKey, Brooks signed an Employment Agreement and an Employee Non-Disclosure and Non-Competition Agreement (the "Agreement") with TurnKey. The Agreement is attached and incorporated by reference as Exhibit A.

11. Brooks' employment relationship with TurnKey ended on or about February 13, 2019.

12. Brooks was hired by HomeWAV in a sales capacity and began his employment at HomeWAV on or about February 18, 2019.

13. The Agreement contains certain restrictive covenants, which are set forth below.

14. The Agreement contains a non-competition clause (the "Non-Compete Clause"), which states as follows:[1]

---

[1] Any reference to "I" and/or "my" in the Agreement refers to Brooks.

> I shall not to [sic] accept employment with or render services on behalf of ***any competitor*** (e.g. ***any person or entity with business strategies like the Company's, or that otherwise provides, or proposes to provide, products, services, or both, like those the Company offers***, or the Company is evaluating offering, to customers or clients like current or prospective customers or clients of the Company) ***in any capacity*** for twelve (12) months following the termination of my employment.

Ex. A, Agreement, ¶2(c)(iii) (emphasis added).

15.  Among other things, on its face, the Non-Compete Clause is unlimited in its geographic reach as it contains no geographic limitation.

16.  The Agreement also contains an employee non-solicitation clause (the "Employee Non-Solicit"), which states as follows:

> I shall not, for a period of twelve (12) months following the termination of my employment with the Company for any reason, directly or indirectly solicit, induce, recruit, or encourage any officer, director, employee, independent contractor or consultant of the Company who is employed by or affiliated with the Company ***to leave the Company or terminate his or her employment or relationship with the Company***.

Ex. A, Agreement, ¶2(c)(i) (emphasis added).

17.  The Agreement also contains a non-solicitation clause (the "Customer Non-Solicit Clause"), which states as follows:

> I shall not, for a period of twelve (12) months following the termination of my employment, solicit any actual or prospective customer or client of the Company that I worked with, ***or had notice of***, at any time during the 12 months preceding my termination from the Company, for the purpose of selling products or services competitive with the Company's.

Ex. A, Agreement, ¶2(c)(ii) (emphasis added).

18.  The Agreement also contains a non-disclosure clause (the "Non-Disclosure Clause"), which states as follows:

> I shall not, following the termination of my employment with the Company for any reason, directly or indirectly, ***use the Company's trade secrets, Proprietary Information, or other competitively sensitive information*** for the benefit of anyone other than the Company, or in any

4

> manner that might be adverse to the Company, or otherwise facilitate ***or engage in any activity that <u>might</u> amount to unfair competition, including but not limited to interfering with any business relationship or contract between the Company and any of its customers, clients, vendors, suppliers, contractors, or business partners***.

<u>Ex. A</u>, Agreement, ¶2(c)(iv) (emphasis added).

19. Among other things, on its face, the Non-Disclosure Clause is unlimited in duration, in that it contains no durational limitation.

20. The Agreement defines "Proprietary Information" (the term used in the Non-Disclosure Clause above) as follows:

> 1. **Proprietary Information.**
>
>    (a)   <u>Definition</u>.  I understand that the term **"Proprietary Information"** in this Agreement means ***any information and materials***, in whatever form, tangible or intangible, whether disclosed to or learned or developed by me before or after the execution of this Agreement, whether or not marked or identified as confidential or proprietary, ***pertaining in any manner to the business*** of or used by the Company, or pertaining in any manner to any person to whom or which the Company owes a duty of confidentiality.
>
>    Proprietary information includes, but is not limited to, the following types of information and materials: (1) research, development, technical or engineering information, ***know-how***, data processing or computer software, programs, tools, data, designs, diagrams, drawings, schematics, sketches or other visual representations, plans, projects, manuals, documents, files, photographs, results, specifications, trade secrets, inventions, discoveries, compositions, ideas, concepts, structures, improvements, products, prototypes, instruments, machinery, equipment, processes, formulas, algorithms, methods, techniques, works in process, systems, technologies, formulae, regulatory information, disclosures, applications and other materials; (ii) financial and operational information and materials, including information and materials relating to sales, costs, bids, profits, vendors, suppliers, licensors, markets, distributors, joint venture partners, customers, subscribers, and members, whether existing or potential; (iii) business and marketing information and materials, including information and materials relating to future development and new product concepts, customer and prospect lists and contact information and customer preferences; (iv) personnel files and information about compensation, benefits and other terms of employment of the Company's

other employees and independent contractors; (v) versions, drafts, titles, themes, ideas, content, artwork and visual images; (vi) any information that has or could have commercial value or other utility to, or disclosure of which is or could be harmful to, the business of the Company; and (vii) any other information or materials relating to strategies, or past, present, planned or foreseeable business, products, developments, technology or activities of the Company.

Ex. A, Agreement, ¶1(a) (emphasis added).

21. In order for a restrictive covenant in an employment contract to be valid and enforceable under Wisconsin law, the covenant must contain specified (and reasonable) territorial and temporal restrictions. Wis. Stat. § 103.465.

22. Under Wisconsin law, "[a]ny covenant . . . imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint." *Id*.

23. The Non-Compete Clause in Paragraph 2(c)(iii) of the Agreement **contains no such territorial restriction**, but instead restricts Brooks from accepting employment with "any person or entity with business strategies like [TurnKey's] *or* that provides, proposes to provide, products, services, or both, like those [TurnKey] offers . . ."

24. Further, because each provision in a contract has a separate meaning, the Non-Compete Clause prohibits employment with competitors (or persons/entities that provide "products or services . . . like those [TurnKey] offers") as well as other persons/entities that do not compete with TurnKey in the sale of like products or services, but rather have "business strategies like [TurnKey's]."

25. The Customer Non-Solicitation Clause in Paragraph 2(c)(ii) of the Agreement contains no territorial or reasonable customer-based limitation, but instead restricts Brooks from soliciting any actual customer *or* prospective customer (which by plain meaning is not yet, but

6

might become a customer at some unspecified point in the indefinite future), without regard to whether Brooks worked with such customers or prospects, if he simply **"had notice of"** them.

26. The Employee Non-Solicitation Clause in Paragraph 2(c)(i) of the Agreement contains no territorial limitation, is not reasonably related to any particular type of employee, applies without regard to Mr. Brooks' familiarity with the employees restricted, and is not related to any type of competitive threat associated with its employees' positions in the company.

27. The Non-Disclosure Clause in Paragraph 2(c)(iv) of the Agreement contains *no temporal restriction* and purports to restrict Brooks from disclosing *any information pertaining in any manner* to TurnKey's business.

28. Further, in the Agreement, TurnKey defines "Proprietary Information" in Paragraph 1(a) of the Agreement to include Brooks' *know-how* knowledge (among other broad and sweeping definitional language).

29. On or about April 10, 2019 TurnKey sent a letter to HomeWAV purporting to remind HomeWAV of the Agreement, the restrictive covenants, and Brooks' supposed obligations thereunder. In the letter TurnKey stated that it "reserve[s] the right to pursue all of [its] available remedies" in the event that Brooks was employed by HomeWAV. A copy of the letter is attached and incorporated by reference as <u>Exhibit B</u>.

30. HomeWAV confirmed to TurnKey that Brooks was, and is, employed by HomeWAV.

31. In a later communication, TurnKey insisted Mr. Brooks stop selling to customers in the industry and further demanded that Mr. Brooks stop contacting his former coworkers at TurnKey (the latter demand being in reference to TurnKey's insistence on the enforcement of the Employee-Non-Solicit).

32. HomeWAV informed TurnKey of its belief that the restrictions in the Agreement are void and unenforceable under Wisconsin law.

33. On or about April 30, 2019, counsel for TurnKey presented HomeWAV with two options: (1) terminate Brooks' employment relationship with HomeWAV; or (2) accept service of a Complaint against HomeWAV for tortious interference with contract and tortious interference with present and prospective contractual relationships. A draft of the Complaint was provided to HomeWAV at that time. A copy of TurnKey's demand letter with the draft Complaint are attached and incorporated by reference as collective Exhibit C.

34. On May 3, 2019, TurnKey sent a Demand for Arbitration (the "Arbitration Demand") to Brooks and his attorney. A copy of the Arbitration Demand is attached and incorporated by reference as Exhibit D.

35. Among the counts included in the Arbitration Demand is a claim against Brooks for an alleged breach of the restrictive covenant obligations contained in the Agreement and referenced herein.

36. The Arbitration Demand alleges, among other things, that "Brooks' employment with HomeWAV constitutes a breach of the Restrictive Covenant Agreement." *See* Exhibit D, ¶¶ 20; 28 – 31.

37. HomeWAV is not a party to the Agreement (or the arbitration provision in the Agreement) and is therefore not bound by that Agreement.

**COUNT I**

(For declaratory judgment that the Agreement's Non-Compete Clause is illegal and unenforceable)

38. HomeWAV repeats and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

8

39. TurnKey has no reasonable, protectable interest in the Non-Compete Clause under applicable law.

40. The Non-Compete Clause in the Agreement purports to prohibit Brooks from being employed *in any capacity* whatsoever by any person/entity that competes with TurnKey in the sale or provision of goods or services like TurnKey's goods or services, *or* any person/entity with "business strategies" like TurnKey's, for a period of twelve (12) months following the termination of Brooks' employment relationship with TurnKey.

41. Further, the Non-Compete Clause contains no territorial limitation, and on its face is applicable to anywhere in the world.

42. Therefore, the entirety of the Non-Compete Clause in the Agreement is illegal, void and unenforceable on its face under applicable law.

43. TurnKey has alleged that HomeWAV is a competitor covered by the Non-Compete Clause and that Brooks is not permitted to be employed by HomeWAV. TurnKey has threatened to bring a lawsuit against HomeWAV based, in part, on such allegation.

44. There is an actual controversy between HomeWAV and TurnKey as to the legality and enforceability of the Non-Compete Clause in the Agreement.

**COUNT II**

(For declaratory judgment that the Agreement's Customer Non-Solicit Clause and Employee Non-Solicit Clause are both illegal and unenforceable)

45. HomeWAV repeats and incorporates by reference the allegations in paragraphs 1 through 44 as if fully set forth herein.

46. TurnKey has no reasonable, protectable interest in either the Customer Non-Solicit Clause or the Employee Non-Solicit Clause under applicable law.

47. The Customer Non-Solicit Clause in the Agreement purports to restrict Brooks from soliciting any actual *or prospective customer* that he **had notice of**.

48. Therefore, the entirety of the Non-Solicit Clause in the Agreement is illegal, void and unenforceable on its face under applicable law.

49. TurnKey has alleged that Brooks has breached the Non-Solicit Clause and that he continues to be bound by the clause as an employee of HomeWAV. TurnKey has threatened to bring a lawsuit against HomeWAV based, in part, on such allegation.

50. The Employee Non-Solicit Clause contains no territorial limitation, is not reasonably related to any particular type of employee, applies without regard to Mr. Brooks' familiarity with the employees restricted, and is not related to any type of competitive threat associated with its employees' positions in the company.

51. Therefore, the entirety of the Employee Non-Solicit Clause in the Agreement is illegal, void and unenforceable on its face under applicable law.

52. TurnKey has alleged that Brooks has breached the Employee Non-Solicit Clause and has demanded that he comply with it, and in its draft complaint sent to HomeWAV has further threatened to ask the Court to enjoin HomeWAV itself from soliciting any of TurnKey's employees (*See* Ex. C, p. 7, "Prayer For Relief," par . 2).

53. There is an actual controversy between HomeWAV and TurnKey as to the legality and enforceability of both the Customer Non-Solicit Clause and the Employee Non-Solicit Clause in the Agreement.

## COUNT III

(For declaratory judgment that the Agreement's Non-Disclosure Clause and Proprietary Information definition are illegal and unenforceable)

54. HomeWAV repeats and incorporates by reference the allegations in paragraphs 1 through 53 as if fully set forth herein.

55. TurnKey has no reasonable, protectable interest in the Non-Disclosure Clause under applicable law.

56. The Non-Disclosure Clause in the Agreement is invalid purports to restrict Brooks from disclosing or using *any information and materials pertaining in any manner* to TurnKey's business for an *unlimited duration of time*.

57. Therefore, the entirety of the Non-Disclosure Clause in the Agreement is illegal, void and unenforceable on its face under applicable law.

58. Moreover, TurnKey's definition of "Proprietary Information" purports to include Brooks' knowledge of general "know-how." Therefore, the entirety of TurnKey's definition of "Proprietary Information" in the Agreement is overly broad and illegal, void and unenforceable on its face under applicable law.

59. TurnKey has alleged that Brooks has used or disclosed TurnKey's Proprietary Information in violation of the Agreement. TurnKey has threatened to bring a lawsuit against HomeWAV based, in part, on such allegation.

60. There is an actual controversy between HomeWAV and TurnKey as to the enforceability of the Non-Disclosure Clause in the Agreement.

## COUNT IV

(For declaratory judgment that HomeWAV has not tortiously interfered with the restrictive covenants contained in the Agreement)

61. HomeWAV repeats and incorporates by reference the allegations in paragraphs 1 through 60 as if fully set forth herein.

62. In order to be able to state a claim against HomeWAV for tortious interference with a contractual relationship, TurnKey must establish the enforceability of an underlying contract – the Agreement, and its specific restrictive covenants as referenced herein.

63. As set forth in Counts I through III, the restrictive covenants contained in the Agreement are void, illegal and unenforceable as a matter of law.

64. There is an actual controversy between HomeWAV and TurnKey as to the enforceability of the restrictive covenants in the Agreement and, as such, whether HomeWAV tortiously interfered with TurnKey's contractual relationships.

## COUNT V

(For declaratory judgment that HomeWAV has not tortiously interfered with TurnKey's present and prospective customer contractual relationships)

65. HomeWAV repeats and incorporates by reference the allegations in paragraphs 1 through 64 as if fully set forth herein.

66. In order to be able to state a claim against HomeWAV for tortious interference with present or prospective contractual relationships, among other elements, TurnKey must establish that HomeWAV intentionally interfered with such relationships and that HomeWAV was not justified or privileged to interfere.

67. As TurnKey's competitor, HomeWAV is justified and privileged to compete for customers in the industry.

68. HomeWAV has not engaged in any improper means in competing with TurnKey.

69. There is an actual controversy between HomeWAV and TurnKey as to whether HomeWAV tortiously interfered with TurnKey's present and prospective contractual relationships.

## PRAYER FOR RELIEF

WHEREFORE, HomeWAV demands that judgment be entered against TurnKey, as follows:

A. Declaring that the Non-Compete Clause in the Agreement is, in its entirety, void as a matter of law and/or unenforceable;

B. Declaring that both the Customer Non-Solicit Clause and the Employee Non-Solicit Clause in the Agreement are, in their entirety, void as a matter of law and/or unenforceable;

C. Declaring that the Non-Disclosure Clause and definition of Proprietary Information are, in their entirety, void as a matter of law and/or unenforceable;

D. Declaring that HomeWAV's engagement and hiring of Brooks, and Brooks and HomeWAV soliciting and doing business with any and all customers and prospective customers does not and will not constitute tortious interference with the Agreement or with TurnKey's contractual relationships and with present and prospective contractual relationships; and

E. Granting such other and further relief as this Court deems just and proper under the circumstances.

Date: May 10, 2019.

        **MICHAEL BEST & FRIEDRICH LLP**

By: /s/ John C. Scheller
Amy O. Bruchs, #1021530
Michelle L. Dama, #1041809
John C. Scheller, #1031247
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806
Telephone: 608.257.3501
Facsimile: 608.283.2275
aobruchs@michaelbest.com
mldama@michaelbest.com
jcscheller@michaelbest.com

**ARMSTRONG TEASDALE LLP**
Michael B. Kass (pro hac vice to be filed)
Joshua C. Sindel (pro hac vice to be filed)
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
Telephone: 314.621.5070
Facscimile: 314.612.2396
mkass@armstrongteasdale.com
jsindel@armstrongteadale.com

*Attorneys for Plaintiff HomeWAV, LLC*